AMBRO, Circuit Judge, with whom Judge McKee joins,
concurring.
I join Judge Ackerman’s fine opinion. I write separately, however, to add to the comments made about prosecuting Rutherford at the federal level. As our opinion *845 today makes clear, prosecuting numerous “garden-variety” crimes is within the Federal Government’s power under the Hobbs Act. That is the natural consequence of Congress’s decision to regulate the crime of robbery to the fullest extent of its commerce power. Indeed, the breadth of the Hobbs Act was not lost on Congress at the time of its passage.[5]
What we see here, though, is a relatively new use of the Hobbs Act that deserves comment. At the age of only 25, Daniel Rutherford is already a career criminal— enough so to exceed the criminal history points necessary to reach a criminal history of VI (the maximum) under the Sentencing Guidelines. As numerous commentators have written, federal sentences are typically much longer than their state counterparts. See, e.g., Ronald F. Wright, Federal or State? Sorting as a Sentencing Choice, 21 Grim. Just., Summer 2006, at 16, 17-19; John S. Baker, Jurisdictional and Separation of Powers Strategies To Limit the Expansion of Federal Crimes, 54 Am. Univ. L.Rev. 545, 575-76 (2005); Task Force on the Federalization of Criminal Law, Am. Bar Ass’n, The Federalization of Criminal Law 14-15 (1998). In particular, brandishing a firearm while committing a crime brings a mandatory consecutive seven-year sentence, and a second such offense brings a mandatory consecutive 25-year sentence. 18 U.S.C. § 924(c)(1). The catch, of course, is that the predicate offense must be a federal crime. Thus, by prosecuting Daniel Rutherford for two Hobbs Act violations in which he brandished firearms, the Government achieved a mandatory 32-year sentence for the gun crimes, and a Guidelines-recommended range of 10-12 additional years for the Hobbs Act violations. Thus, we have Rutherford’s 42-year sentence — a length that would be unthinkable in many state systems for these underlying facts.[6]
What has this wrought? By prosecuting Rutherford at the federal level, the Federal Government has effectively incapacitated a career criminal for the remainder of his adult life. To do so, however, it has overridden the default state criminal system in what looks like a classic state-law crime.[7]

. The House Judiciary Committee’s Minority Report lambasted the nascent Hobbs Act for federalizing traditional state crimes. H.R.Rep. No. 78-66, at 14 (1944). The Majority Report did not deny it; rather, it emphasized Congress's “exclusive and unlimited power to regulate interstate commerce.” Id. at 9. Similarly, in floor debate Representative Hobbs responded to criticism that the Act was aimed exclusively at organized labor by noting that it applied to all robberies and extortions with some effect on interstate commerce. 91 Cong. Rec. 11912 (1945) (statement of Rep. Hobbs).

. For a comprehensive overview of how federal gun-related enhancements have spurred federal prosecutors to involve themselves with traditionally state crimes, see generally Sara Sun Beale, The Unintended Consequences of Enhancing Gun Penalties: Shooting Down the Commerce Clause and Arming Federal Prosecutors, 51 Duke L.J. 1641 (2002).

. As Judges McKee and Smith noted in United States v. Bonner, 363 F.3d 213 (3d Cir.2004), judges should tread carefully when criticizing a legitimate use of prosecutorial discretion, as that power is not ours to wield. Id. at 219-20 (Smith, J., concurring); id. at 228 (McKee, J., dissenting). Yet it is difficult in this case not to point out this new and probably unanticipated use of the Hobbs Act. It is also hard not to wonder whether prosecuting this garden-variety robbery in order to obtain a virtual life sentence is the best use of scarce federal resources.